**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | |
|---|---|
| BRITTANY ROGERS, on Behalf of<br>Herself and All Others<br>Similarly Situated,<br><br>     *Plaintiff,*<br><br>v.<br><br>THE WEBSTAURANT STORE, INC.,<br>and TRICIA WILKERSON,<br><br>     *Defendants.* | CASE NO. <u>4:18-CV-75-</u>JHM<br><br>JURY DEMANDED |

## COMPLAINT

Comes Plaintiff Brittany Rogers (hereinafter referred to as "Plaintiff") and, for her Complaint against Defendant The WEBstaurant Store, Inc. (hereafter, "Defendant"), states as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

2.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because Defendant operates a customer support facility located in the Western District of Kentucky, in Madisonville, Hopkins County, Kentucky (the "Madisonville facility") and employed Plaintiff at that facility and thus Defendant conducts business and can be found in the Western District of Kentucky.

## PARTIES

3.      Plaintiff Brittany Rogers is a resident of Hopkins County, Kentucky.

4.      Defendant The WEBstaurant Store, Inc. (hereafter, "Defendant"; unless referred to as Defendants or reference is expressly made to Defendant Wilkerson, all references herein to "Defendant" are to Defendant The WEBstaurant Store, Inc.) is a Pennsylvania for-profit corporation engaged in the business of selling commercial restaurant equipment (such as that utilized in kitchens of restaurants), and may be served with process by service on Morgan Stone, who is Defendant's registered agent listed with the Commonwealth of Kentucky Secretary of State, at 410 Commerce Drive, Madisonville, KY 42431, which is Defendant's registered agent address listed with the Commonwealth of Kentucky Secretary of State.

5.      Defendant Tricia Wilkerson (hereafter, "Wilkerson") is an individual resident of the Commonwealth of Kentucky.  Wilkerson was (and upon information and belief is) an employee of Defendant The WEBstaurant Store, Inc. and an "employer" of Plaintiff (and certain of those similarly-situated to Plaintiff) as that term is defined in the FLSA and can, upon information and belief, be served with process at 410 Commerce Drive, Madisonville, KY 42431.

6.      Defendant's annual sales have, at all times relevant to this Complaint, exceeded $500,000.00.

7.      At all times relevant to this Complaint, Defendant has regularly engaged in interstate commerce and was an employer within the meaning of the FLSA, 29 U.S.C. §§ 206-207.

8.      Plaintiff was employed as an employee at the Madisonville, Kentucky customer support facility operated by Defendant.

9.      Plaintiff's position was non-exempt under the Fair Labor Standards Act and, accordingly, Defendant was required to pay Plaintiff overtime pay for work by Plaintiff in excess of forty hours per workweek.

10.     Throughout her employment, Plaintiff was regularly scheduled by Defendant to work five eight-hour shifts per week, but regularly worked more than eight hours per day; although Defendant was aware Plaintiff was working more than forty hours per workweek, it did not pay her overtime pay.  Plaintiff has filed or will file a separate action in which she seeks, on behalf of herself and on behalf of a collective action of similarly-situated employees, to recover the overtime pay Defendant should have paid but did not pay.

11.     Defendants instilled a culture of fear and silence in which employees were expected to work overtime and to remain silent about Defendant's violations of overtime and not assert the employee's right to be paid overtime for hours worked in excess of forty hours per week.

12.     While employed by Defendant, Plaintiff made protected assertions of her right to be paid for her time spent in excess of forty hours per workweek.

13.     Specifically, Plaintiff had the following exchange with her manager, Defendant Wilkerson, on Tuesday, November 7, 2017:

| Brittany Rogers: | Hey!  I am so sorry for being late!  It turned out the fuse to my starter blew so it was not the battery.  Hopefully it is fixed for good now since I change out the fuse.  I am happy to stay over to make up the time I missed today.  On Sunday I did have a call that ran over.  I left about 15 minutes late.  I was not going to say anything about it however if I could deduct that from the 15 minutes I owe that would be great.  Otherwise I am happy to make up the full 25 minutes no problem if you do not want me to do that. |
|---|---|
| Tricia Wilkerson: | Typically we are looking at any time over 15 minutes that we would want to give back.  Usually 15 minutes is a reasonable amount of time to finish things up for the day and leave.  If you |

would like to stay over today that would be fine.  We can just say
15 minutes staying over this evening will work.

14.     Shortly after asserting her right to be paid or otherwise compensated for working

beyond her scheduled shift (which would have the effect of her working beyond forty hours per

week, without payment of overtime), and in retaliation for Plaintiff's protected assertions of her

rights under the FLSA, Defendants decided to place, and thereafter placed Plaintiff on a

"performance improvement plan."  Upon information and belief, Wilkerson initiated the decision

to retaliate against Plaintiff for the exercise of her FLSA rights by placing her on the

"performance improvement plan" or, in the alternative, carried out the directions of one or more

other managerial employees of Defendant to retaliate against Plaintiff for the exercise of her

FLSA rights by placing her on the "performance improvement plan" knowing that such

retaliation was illegal.

15.     As part of the "performance improvement plan," Plaintiff was asked to perform

work outside of the hours of their regularly-scheduled shift.  This work included review by the

employee of the employee's own work, review of company literature, and writing essays about

company "principles."

16.     Plaintiff was specifically instructed by her supervisor, Defendant Wilkerson, to

perform the work outside of her regular working hours (which always consisted of five

scheduled eight-hour shifts per week), and informed by Wilkerson that Plaintiff would not be

paid for this work.

17.     Because Plaintiff was told that she would not be paid for her "after hours" work

on the "performance improvement plan," she did not keep track of their hours worked.

18.     On December 5, 2017, Plaintiff had a meeting with her supervisor, Tricia

Wilkerson, and her supervisor's supervisor, Chelsea Texter.

19.     During this meeting, Plaintiff asked Ms. Wilkerson in the presence of Ms. Texter whether it was correct that Plaintiff was being asked to perform work relating to the "performance improvement plan" outside of her regular working hours (which always consisted of five scheduled eight-hour shifts per week), and that Plaintiff would not be paid for this work.

20.     At the time of asking this question, Plaintiff believed that she should be paid for her work relating to the "performance improvement plan" outside of her regular working hours (which always consisted of five scheduled eight-hour shifts per week), and Plaintiff asked the question in a tone suggesting that she expected Defendant to either pay Plaintiff for her work relating to the performance improvement plan in excess of forty hours per week or not assign work to be performed in excess of forty hours per week.  By asking the question, Plaintiff hoped that Ms. Texter, as Ms. Wilkerson's supervisor, would be able to correct, and would correct, the illegal policy that Wilkerson had described to Plaintiff that Plaintiff was being asked to perform work relating to the "performance improvement plan" outside of her regular working hours (which always consisted of five scheduled eight-hour shifts per week), and that Plaintiff would not be paid for this additional work.

21.     Ms. Wilkerson, during the meeting, in the presence of Ms. Texter, confirmed that Plaintiff was being asked to perform work relating to the "performance improvement plan" outside of her regular working hours (which always consisted of five scheduled eight-hour shifts per week), and that Plaintiff would not be paid for this work.  Ms. Texter, who again was Ms. Wilkerson's supervisor, did not correct Ms. Wilkerson.

22.     In addition to confirming this fact, in Ms. Texter's presence, Ms. Wilkerson criticized Plaintiff in a harsh tone for questioning whether she would be paid for her hours worked relating to the performance improvement plan in excess of forty hours per week,

suggesting that Plaintiff's question suggested that Plaintiff was insufficiently dedicated to her career.  Ms. Texter, who again was Ms. Wilkerson's supervisor, did not correct Ms. Wilkerson.

23.     Defendant had agreed to allow Plaintiff to submit Plaintiff's notes of her meetings relating to the performance improvement plan to Wilkerson after the meetings, and further agreed that Wilkerson would correct or add to the notes if Wilkerson believed that Plaintiff's notes did not accurately reflect what occurred during the meeting.

24.     After the December 5, 2017 meeting, Plaintiff prepared notes of the meeting, which included documentation of the portion of the conversation relating to Plaintiff working on the performance improvement plan in addition to her regularly-scheduled forty hours of work per workweek, a copy of which is attached hereto as Exhibit 1, and on December 15, 2017 submitted the notes to Wilkerson by email.

25.     Upon reviewing the notes, on December 18, 2017, Wilkerson sent Plaintiff an email, a copy of which is attached hereto as Exhibit 2, categorized as "Importance: High" that stated that "[y]ou listed that you have worked on work related task outside of work hours.  I want to be able to give you time back for anything you have worked beyond your 40 hours a week.  Would you please go ahead and step away from calls/chats/emails and give me a breakdown of that time worked?  I would like to see dates and the amount of time spent on work related tasks outside of work (worked on at home) as well as any time that you worked over your normal scheduled daily hours here in the office."

26.     Wilkerson provided Plaintiff with a short deadline (by 3:30 p.m. on the same day) for Plaintiff to provide the requested information (Wilkerson's email was sent at 1:28, and Plaintiff's lunch was scheduled from 2:00 to 2:30). Wilkerson explained that the reason she

needed the response within this timeframe was "so I can look into being able to better address all needs listed."

27.     In response to Wilkerson's email, Plaintiff attempted to the best of her ability within the time constraints imposed to recreate the time she had worked outside of business hours and sent the reply included in the email string attached hereto as Exhibit 2, listing eleven hours of work in excess of Plaintiff's regularly-scheduled 40 hours of work per week.

28.     However, due to the time constraints and inability (due to being at work at Defendant's facility) to access her home computer where she had prepared some of the work assignments outside of Plaintiff's regularly-scheduled shifts (the home computer would provide information which would refresh Plaintiff's recollection about work performed), Plaintiff's email did not list all of the time Plaintiff worked in excess of 40 hours of work per week, and Plaintiff specifically noted in her email that "I did not log every evening I stayed late."

29.     Because of, and in retaliation for, Plaintiff's acts of (A) questioning of Defendant's illegal policy of requiring work in excess of forty hours per week but not paying overtime for such work and (B) requesting compensation for hours worked in excess of forty per workweek, Defendant prematurely cut short Plaintiff's "performance improvement plan," which was not scheduled to end until December 26, 2017 (an ending point Wilkerson had mentioned as recently as December 12, 2017), and terminated Plaintiff on the morning of December 19, 2018.

30.     Upon information and belief, Wilkerson initiated the decision to retaliate against Plaintiff for the exercise of her FLSA rights by terminating her employement or, in the alternative, carried out the directions of one or more other employees of Defendant to retaliate against Plaintiff for the exercise of her FLSA rights by terminating her employment, knowing that such retaliation was illegal.

31.     Defendant prepared a summary of its pretextual reasons for terminating Plaintiff, which is attached hereto as Exhibit 3.  However, the true reason for terminating Plaintiff was in retaliation for Plaintiff's assertion of her rights under the Fair Labor Standards Act.

32.     Defendants' decision to terminate Plaintiff in retaliation for Plaintiff's assertion of her rights under the Fair Labor Standards Act was willful, and has caused significant damages to Plaintiff, including but not limited to lost pay from the time of her termination, emotional distress, and attorney's fees.  Plaintiff should be awarded compensatory damages, liquidated damages, and attorney's fees and other reasonable litigation expenses.

Wherefore, Plaintiff prays that the Court:

A.     Issue process and bring Defendants before the Court;

B.     Empanel a jury for the trial of all issues of fact;

C.     Enter a judgment against Defendants awarding Plaintiff damages for her illegal termination, including lost wages, emotional distress damages, interest, and liquidated or exemplary damages, in an amount to be proven at trial;

D.     Award Plaintiff (and order Defendants to pay) all costs of litigation, including expert fees and attorneys' fees;

E.     Grant Plaintiff such other further and/or general relief, legal and/or equitable relief, to which Plaintiff is entitled or which the Court otherwise proper.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff Brittany Rogers*