# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:18-CV-00075-JHM

BRITTANY ROGERS, on Behalf of                               PLAINTIFF
Herself and All Others Similarly Situated

v.

THE WEBSTAURANT STORE, INC.,                               DEFENDANTS
and TRICIA WILKERSON

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion to dismiss the complaint by defendants The Webstaurant Store, Inc. ("Webstaurant") and Tricia Wilkerson. (DN 7.) Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

According to the complaint, plaintiff Brittany Rogers was employed by the Webstaurant at their customer support facility until she was terminated on December 19, 2018. (Pl.'s Compl. [DN 1] ¶¶ 9, 29.) Prior to her termination, on November 7, 2017, Rogers emailed Wilkerson, Rogers' supervisor at the Webstaurant, to apologize for being twenty-five minutes late to work. (*Id.* ¶ 13.) In the email, she mentioned that she had stayed fifteen minutes beyond the end of her shift the previous Sunday, and she inquired if she could offset the twenty-five minutes she now owed with those fifteen minutes she had already worked. (*Id.*) Wilkerson responded with the following:

> Typically we are looking at any time over 15 minutes that we would want to give back. Usually 15 minutes is a reasonable amount of time to finish things up for the day and leave. If you would like to stay over today that would be fine. We can just say 15 minutes staying over this evening will work.

(*Id.*) Shortly after this exchange, Rogers was placed on a "performance improvement plan" ("PIP"). (*Id.* ¶ 14.) The PIP included having Rogers perform reviews of her own work, review

company literature, and write essays on company principles. (*Id.* ¶ 15.) Wilkerson instructed Rogers to perform the work outside her regular working hours and told her that she would not be paid for her work. (*Id.* ¶ 16.)

On December 5, 2017, Rogers met with Wilkerson and Chelsea Texter, Wilkerson's supervisor. (*Id.* ¶ 18.) At this meeting, Rogers asked Wilkerson whether she was to complete the PIP outside of her regular working hours and whether she would be paid for this time. (*Id.* ¶ 19.) Rogers "asked the question in a tone suggesting that she expected Defendant to either pay Plaintiff for her work relating to the [PIP] in excess of forty hours per week or not assign work to be performed in excess of forty hours per week." (*Id.* ¶ 20.) Wilkerson confirmed that she was to complete the PIP outside of work hours and that she would not be paid for it, criticizing Rogers for asking the question and suggesting that she was insufficiently dedicated to her work. (*Id.* ¶¶ 21–22.)

Rogers prepared notes from this meeting and submitted them to Wilkerson for review, as the two had previously agreed. (*Id.* ¶ 23.) Rogers included in her notes that she was to do her PIP assignments on her own time. (*Id.* ¶ 24; 12/5/17 Notes [DN 1-2] at 1.) She emailed the notes to Wilkerson on December 15, 2017. (*Id.*) On December 18, Wilkerson emailed her regarding her notes:

> You listed that you have worked on work related tasks outside of work hours. I want to be able to give you time back for anything you have worked beyond your 40 hours a week.
>
> Would you please go ahead and step away from calls/chats/emails and give me a breakdown of that time worked? I would like to see dates and the amount of time spent on work related tasks outside of work (worked on at home) as well as any time that you worked over your normal scheduled daily hours here in the office.

(*Id.* ¶ 26; 12/18/17 emails [DN 1-3] at 2.) Wilkerson requested the information by 3:30 p.m., two hours after the email was sent. (*Id.*) Rogers responded with what she acknowledged was an incomplete list of all the time she worked extra hours, as she had not kept a detailed log of all the hours she worked and could not recall them all in the short time frame she was given. (*Id.* ¶ 28.) Rogers was terminated the next morning, December 19, despite her PIP not being scheduled to be completed until December 26. (*Id.* ¶ 29.)

Rogers filed the present action, on behalf of herself and others similarly situated, in this Court on June 4, 2018, claiming that the Webstaurant and Wilkerson retaliated against her for exercising her rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). (*Id.* ¶ 30.) The Webstaurant and Wilkerson have now moved to dismiss the complaint, as Rogers has not stated a claim upon which relief can be granted. (DN 7.)

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility

3

of misconduct." *Id*. at 678–79. Instead, a complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 677 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

Both the Webstaurant and Wilkerson argue that Rogers has failed to state a claim for relief under the FLSA's antiretaliation provision, since she never made a "complaint" under the statute. Wilkerson also argues that she should be dismissed from the action, as she is not an "employer" under the FLSA. The Court will first decide whether Rogers has stated a claim under the FLSA, and only if she has will the Court consider whether Wilkerson is a proper defendant.

Under the FLSA, it is unlawful to "discharge or . . . discriminate against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a)(3). The FLSA also requires employers to compensate employees for any overtime worked "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Rogers argues that the defendants terminated her in retaliation for complaining about not being compensated for the extra hours she was working to complete the PIP. The defendants, however, argue that Rogers never made a "complaint" that would bring her within the antiretaliation provision's protection.

A complaint under the FLSA may be made either in writing or orally. *Kasten v. Saint-Gobain Performance Plastics. Corp.*, 563 U.S. 1, 14 (2011). Regardless of the form that the complaint takes, it "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call

4

for their protection." *Id.* This requires the complaint to take on "some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Id.*

The allegations in the complaint fail to meet this standard. When Rogers twice asked whether she was to complete the PIP outside of work hours and whether she would be paid, she did not make a "sufficiently clear and detailed" assertion of her right to overtime pay. In fact, she did not make an assertion at all, as she merely asked whether she would be paid for this time. *See Miller v. Roche Sur. and Cas. Co.*, 502 F. App'x 891, 894 (11th Cir. 2012) (plaintiff failed to file "complaint within the meaning of § 215(a)(3) when she emailed her supervisor to ask for a time and place to express breast milk"). The tone in which Rogers alleges she asked about overtime pay the second time goes to the "content and context" surrounding the interaction, but it is still insufficient to constitute a complaint. Given that the complaint must take on "some degree of formality," an employee's enquiry about pay that is made in a tone that suggests what answer the employee hopes to hear cannot be the level of formality the Supreme Court envisioned in *Kasten*. *See Lasater v. Tex. A & M Univ.-Commerce*, 495 F. App'x 458, 461, 2012 WL 5246602, at *3 (5th Cir. Oct. 24, 2012) (unpublished table decision) (quoting *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44 (1st Cir. 1999) ("Not all 'abstract grumblings' or vague expressions of discontent are actionable as complaints")).

Nor can the notes Rogers submitted regarding the December 5 meeting be considered a complaint under § 215(a)(3). The relevant notes state the following:

- Discussed that performing PIP assignments have been very time consuming asked if these were to be done on my own time.
    - Said while on PIP I should be motivated enough to do this on my own time
    - Self Reflection assignments must be done on my own time

- o Self reflection can happen anywhere such as work, home and through everyday interactions
- o Feedback assignments said they would be handled similar to QA where they should be completed on my own time during work. Time will not be allotted to complete these assignments.
- o Did agree that if I need more time to complete Feedback assignments can let her know that this could possibly be accommodated

(12/5/17 Notes [DN 1-2] at 1.) The submission of these notes would not give "fair notice that a grievance has been lodged" and cause an employer to "reasonably understand the matter as part of its business concerns." They function in much the same manner as Rogers' direct questions regarding her pay for completing the PIP do, as they do not assert a right to overtime pay.

The only other submission that could be considered a "complaint" is Rogers's submission of her hours worked on the PIP outside of normal work hours. Wilkerson's email requesting that Rogers submit these hours does show that the defendants were aware that Rogers was not being paid for these hours. But the complaint does not plausibly allege that, by submitting a partial list of hours spent working outside of her normal working hours, Rogers was making "an assertion of rights protected by the statute and a call for their protection." The allegations show that Rogers submitted her hours because Wilkerson requested them, not to formally grieve the fact that she had not been paid for those hours. *See Nightingale v. Wal-Mart Stores, Inc.*, 2015 WL 1719421, at *3 (S.D. Ohio Apr. 15, 2015) (FLSA retaliation claim failed because complaint about lack of overtime pay was made in response to employer's promise to pay overtime, not statute's guarantee of overtime pay). And while "the [FLSA] itself need not be mentioned to put an employer on notice that its protections are being sought," *Spiteri v. AT&T Holdings, Inc.*, 40 F. Supp. 3d 869, 876 (E.D. Mich. 2014), a plaintiff must provide enough details in their complaint so that the employer understands that he or she is asserting rights under the FLSA. Rogers' two questions

about overtime pay, her submission of notes memorializing that she would not be paid overtime, and her submission of a time sheet once she learned she would be paid overtime do not meet this standard, either individually or collectively. *Compare with Pelham v. Unipres U.S.A, Inc.*, 2015 WL 4425544, at *5 (M.D. Tenn. Jul. 17, 2015) (plaintiff stated claim for FLSA retaliation when he "complained to Unipres 'every day' for two weeks that he had 'still not gotten paid' his federally-mandated minimum wage"). *Kasten* and § 215(a)(3) require a plaintiff to have made a complaint, and Rogers fails to allege that she ever complained about not receiving overtime pay. Therefore, the motion to dismiss will be granted, and the Court need not address Wilkerson's argument that she is not an employer under the FLSA.

## IV. Conclusion

Therefore, **IT IS HEREBY ORDERED** that the motion to dismiss by defendants The Webstaurant Store, Inc. and Tricia Wilkerson (DN 7) is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 6, 2018

cc: counsel of record