# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: May 23, 2019

Mark N Foster
Law Office of Mark N. Foster
P.O. Box 869
Madisonville, KY 42431

Ms. Courtney Lauren Graham
Mr. Randall S. Strause
Strause Law Group
804 Stone Creek Parkway
Suite One
Louisville, KY 40223

          Re: Case No. 18-6229, *Brittany Rogers v. The Webstaurant Store, Inc., et al*
               Originating Case No. : 4:18-cv-00075

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

                                       Sincerely yours,

                                       s/Cathryn Lovely
                                       Opinions Deputy

cc: Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0267n.06

Case No. 18-6229

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 23, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BRITTANY ROGERS, on Behalf of Herself and All Others Similarly Situated<br>    Plaintiff-Appellant,<br><br>v.<br><br>THE WEBSTAURANT STORE, INC.;<br>TRICIA WILKERSON<br>    Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |

BEFORE: MERRITT, THAPAR, and READLER, Circuit Judges.

THAPAR, Circuit Judge. Brittany Rogers filed suit against the Webstaurant Store for allegedly retaliating against her after she sought overtime pay. The district court dismissed her suit, and we affirm.

I.

Brittany Rogers worked as a customer service representative for the Webstaurant Store. The main goal of customer service is to provide helpful and friendly service to customers. But Rogers's manager, Tricia Wilkerson, believed that Rogers lacked a "can do attitude towards helping customers." R. 1-4, Pg. ID 14. So Wilkerson worked with Rogers to improve her performance, but her efforts were met with "resistance." *Id.* As part of this process, Wilkerson decided it would be best if Rogers worked on a "performance improvement plan." When Rogers

Case No. 18-6229, *Rogers v. The Webstaurant Store, Inc.*

resisted even working on the performance improvement plan, Webstaurant decided it was best to cut ties with Rogers and let her go.

Rogers did not believe Webstaurant fired her for performance reasons. Instead, she believed that Webstaurant fired her because she complained about not getting overtime pay. So she filed suit under the Fair Labor Standards Act (FLSA). 29 U.S.C. § 201 *et seq*. The district court dismissed her complaint, and Rogers now appeals. We review de novo. *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012).

II.

The FLSA bars employers from retaliating against an employee who has engaged in one of four protected activities. 29 U.S.C. § 215(a)(3); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011); *id*. at 20–21 (Scalia, J., dissenting). Among these protected activities is "fil[ing] any complaint." 29 U.S.C. § 215(a)(3). Rogers alleges that she complained to Wilkerson four times about working and not getting overtime pay and that each of these times constitutes "filing a complaint" with Webstaurant.[1]

First, Rogers alleges she emailed her manager in November 2017 about being twenty-five minutes late to work. She first said, "I am so sorry for being late!" and then elaborated that she was "happy to stay over to make up" for the missed twenty-five minutes of her shift. R. 1, Pg. ID 3. Rogers mentioned that she had stayed fifteen minutes late during a previous shift that week, so she asked if she could "deduct" that extra fifteen minutes from the twenty-five minutes she now

---

[1] The Supreme Court has expressly declined to decide whether complaints made to employers, as opposed to the government, are protected by the FLSA. *See Kasten*, 563 U.S. at 17; *id*. at 18 (Scalia, J., dissenting) (arguing that the Court should have decided the case on the grounds that "§ 215(a)(3) does not cover complaints to the employer at all"). This circuit, however, has said that such complaints are protected. *See EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992).

- 2 -

Case No. 18-6229, *Rogers v. The Webstaurant Store, Inc.*

owed (presumably so she only had to work ten minutes extra to make up for being late). Her manager said that staying fifteen minutes late that evening would be enough.

Second, after Webstaurant placed her on their performance improvement plan, Rogers met with Wilkerson and another supervisor. In that meeting, Rogers says she asked Wilkerson "in a tone" whether she was expected to do work on the plan outside of work hours. *Id.* at 5. Rogers alleged that Wilkerson responded to her in a "harsh tone." *Id.*

Third, Rogers sent notes about this meeting to Wilkerson. Rogers said that she wanted to "ensure" that she had all the appropriate information before working on "self-reflection." R. 1-3, Pg. ID 13. Buried in the notes, Rogers wrote that her "self-reflection" was to be "done on [her] own time." R. 1-2, Pg. ID 10.

Fourth, Wilkerson reached out to Rogers after reading the notes because it appeared that Rogers had been working "outside of work hours," and Wilkerson wanted "to give [her] time back for anything [she] ha[d] worked [on] beyond" the forty-hour work week. R. 1-3, Pg. ID 12–13. Rogers responded and said that she "did not log every evening [she] stayed late as [she] did not think it would be a concern" and sent Wilkerson some of the days and times that she had worked past her shift. *Id.* at 12.

In order to get past the motion to dismiss stage, these communications must show that Rogers has a plausible claim for relief. Fed. R. Civ. P. 8(a)(2), 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But Rogers has no plausible claim because none of these alleged communications, if true, qualify as "fil[ing] a complaint" under the FLSA. The Supreme Court has said that the act of filing an FLSA complaint must contain "some degree of formality," such that a reasonable employer would understand it "as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14. Yet none of the alleged communications

Case No. 18-6229, *Rogers v. The Webstaurant Store, Inc.*

had any amount of formality. Indeed, none of them even indicated that Rogers was *complaining* or used any synonym or similar expression.

Moreover, in reading Rogers's depiction of these communications, it is not clear that Webstaurant could have known she *had* grievances or complaints at all. In her first communication, she mentions previously staying late as part of a proposed quid pro quo to excuse arriving to work tardy—something she was "happy" to do. R. 1, Pg. ID 3. Her second communication merely consisted of asking a question in a "tone that suggest[ed] she expected" overtime pay. *Id.* at 5. In her third, Rogers mentioned that she was planning on working on self-reflection outside of work—with no complaints. And her fourth communication explicitly said that she "did not think it would be a concern" to work late. R. 1-3, Pg. ID 12. While an employee need not explicitly mention the FLSA, she must do something to give fair notice that she is *actually* complaining about overtime or a lack of fair compensation, i.e. the core things the FLSA protects. *Kasten*, 563 U.S. at 14. Rogers's vague, non-adversarial conversations about staying late are not sufficiently "serious occasion[s]" to be considered complaints under the FLSA. *Id.*; *cf. Romeo Cmty. Schs.*, 976 F.2d at 989 (holding that an employee had filed an FLSA complaint where she "protest[ed]" to her employer and said they were "breaking some sort of law").

Rogers argues that it would be apparent that she was complaining if we looked at the context of her communications and made all reasonable inferences in her favor. *See Kasten*, 563 U.S. at 14; *Iqbal*, 556 U.S. at 678. For instance, she argues that the "tone" of her question to Wilkerson about working after hours would have given Webstaurant fair notice of her FLSA grievances. But even accepting that she used a negative tone and that Webstaurant knew it was negative, Rogers still has not "shown" that she "is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 679. Rogers needed to show that Webstaurant could have known that this tone

- 4 -

Case No. 18-6229, *Rogers v. The Webstaurant Store, Inc.*

indicated Rogers was not "just letting off steam" but was "in fact making a complaint about an [FLSA] violation." *Kasten*, 563 U.S. at 13–14. Not every grumble or "expression[] of concern or discomfort or frustration" by an employee constitutes an FLSA complaint. *Robinson v. Wal-Mart Stores, Inc.*, 341 F. Supp. 2d 759, 763 (W.D. Mich. 2004). Instead, an employee's expressions must be "sufficiently clear and detailed" to count as a complaint. *Kasten*, 563 U.S. at 14. Rogers's allegations provide no information on how a mere tone of voice can be that clear. Moreover, no required inference can save her lawsuit from that lack of clarity. *Iqbal*, 556 U.S. at 679 (noting that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" should be dismissed).

In a last argument, Rogers says that Webstaurant created a "culture of fear and silence." R. 1, Pg. ID 3. Perhaps that is true. But 29 U.S.C. § 215(a)(3) does not allow employees to bring "culture of fear and silence" claims. Rather, the mechanism that the statute provides to combat such cultures is to protect employees who make complaints. *See Kasten*, 563 U.S. at 11–12. Before the statute can protect those complaints, an employee must *actually* "file[] a[] complaint." 29 U.S.C. § 215(a)(3). Rogers did not do so.

Since Rogers has not adequately alleged that she filed any complaints with Webstaurant, her lawsuit was appropriately dismissed.

III.

To save her otherwise-deficient complaint, Rogers has asked us to take judicial notice of a variety of documents and discovery from another case against Webstaurant alleging unfair pay practices. These documents include emails from Webstaurant allegedly acknowledging FLSA violations, Rogers's log in and log out data allegedly showing that she worked overtime and Webstaurant knew, and waivers of FLSA claims that Webstaurant allegedly "demand[ed]"

- 5 -

Case No. 18-6229, *Rogers v. The Webstaurant Store, Inc.*

employees to sign. D. 19 at 6. She claims these documents show that her claim for retaliation is plausible because (1) they demonstrate that Webstaurant knew of widespread FLSA violations and (2) they give "context" to her conversations with Wilkerson. *Id.* at 3–4, 7–8. Rogers argues that we can consider these documents because she adverted to them in her complaint.

Traditionally, courts could take judicial notice of universally-recognized facts, *see* Fed. R. Evid. 201—such as the fact that Cincinnati is not in Kentucky. *Cf. Brown v. Piper*, 91 U.S. 37, 42 (1875) ("To require proof of every fact, as that Calais is beyond the jurisdiction of the court, would be utterly and absolutely absurd." (internal citation and quotation marks omitted)). Today, courts can also take judicial notice of certain documents that are quoted-in-part or referenced in a complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007).

Rogers has not satisfied either of these standards. For one, Rogers barely referenced these documents in her complaint. A singular sentence noted that Rogers "has filed or will file a separate action . . . ." R. 1, Pg. ID 3. Yet merely stating the fact that a separate legal action may exist is insufficient for a court to take judicial notice of the related documents in that legal action. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014). A plaintiff must advert to sufficient content to put the other parties on notice of what they are arguing with respect to that document. *Id.* Further, when it comes to other court proceedings, courts typically will only take judicial notice of "indisputable court actions, such as the entry of a guilty plea or the dismissal of a civil action." *Id.* A court *cannot* take notice of disputed court filings or disputed subjects in other cases. *Id.* As Rogers's court filings in the separate action are part of a very much disputed record, it is inappropriate to take judicial notice of them.

Essentially, Rogers wants to amend her complaint on appeal through her motion for judicial notice. But such an amendment would violate the clear framework of the Federal Rules of Civil

- 6 -

Case No. 18-6229, *Rogers v. The Webstaurant Store, Inc.*

Procedure. A plaintiff is master of her complaint—she decides who to sue, where to sue, how to sue, and what to sue about. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 395, 398–99 (1987); *In re Omnicare*, 769 F.3d at 467. Most importantly, the plaintiff decides what factual allegations go into her complaint. Yet the privilege of being the party to initiate the lawsuit does not excuse a plaintiff of the responsibility to play by the rules. Among these rules: filing a complaint that shows the defendant and the court what claims for relief are being brought forward. Fed. R. Civ. P. 8(a). If a plaintiff would like to add additional facts or claims, then the plaintiff can seek to amend or supplement her pleadings. Fed. R. Civ. P. 15. If she does not amend and the district court decides to dismiss her lawsuit, the plaintiff can then appeal. On appeal, the plaintiff—like Rogers—cannot invoke the "application for judicial notice as a vehicle to circumvent the Federal Rules of Civil Procedure" and effectively amend a complaint that she did not amend below. *In re Omnicare*, 769 F.3d at 467. What we look at on appeal is not whether Rogers *could* have alleged enough facts or whether she *could* have amended her complaint and then stated enough facts. Instead, we look at whether she *did*. *Id.* She did not.

\*   \*   \*

Rogers's complaint did not state a plausible claim for relief under the FLSA. We further deny her motion for judicial notice. Accordingly, the district court's judgment is affirmed.